UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN ROBERT STERLING | CIVIL ACTION |
| VERSUS | NO. 24-0254 |
| WARDEN DENISE NARCISSE<br>PLAQUEMINES PARISH SHERIFF | SECTION "G"(4) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). On June 20, 2024, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.  Background

####    A.    Complaint (ECF No. 7)

Plaintiff Kevin Robert Sterling ("Sterling"), is convicted inmate currently housed in the Elayn Hunt Correctional Center ("Hunt"). Sterling filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against the Plaquemines Parish Sheriff's Office ("PPSO"), the Plaquemines Parish Sheriff, and Warden Denise Narcisse challenging the conditions of his confinement at the Plaquemines Parish Detention Center ("PPDC"). ECF No. 4, ¶III(B)-(C), at 4. Sterling alleges that the defendants refused to provide basic hygiene needs to inmates housed at

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. Proc. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).
[2] ECF No. 13. Plaintiff was sworn before testifying and the hearing was electronically recorded.

PPDC. *Id*., ¶IV, at 4. He also complains that the defendants refused to provide inmates with the ability to attend Jumu'ah services, *i.e.* the Friday prayer services for Muslims, or consult an Imam for Islamic guidance. As relief, Sterling would like to be financially compensated and allowed his freedom of religion and to attend Jumu'ah services. *Id*., ¶V, at 5.

### B.    *Spears* Hearing

During the *Spears* Hearing, Sterling testified that he sued PPDC Warden Narcisse because she was over the staff at the jail. He also stated that he sued the Plaquemines Parish Sheriff because the Sheriff ran the jail where he was housed.

Sterling testified that the PPDC staff failed to provide him and other inmates with free hygiene supplies. He stated that the inmate handbook indicated that these items were supposed to be made available to the inmates, but the handbook did not indicate that inmates had to pay for them. He claimed that he was required to buy the items he needed, and if he did not have the money, the money was taken from his indigent inmate fund.

He also testified that he is Muslim and has been for two and one-half years. He stated that PPDC failed to provide him with an Imam to preside over Jumu'ah services. He also was unable to get a prayer rug brought into the prison. He stated that there was a Chaplain who came to the prison, but the Chaplain was not Muslim and was not an appropriate person to facilitate over Islamic services. The Chaplain, who Sterling conceded was most likely a volunteer, would bring "daily bread" and Bibles to the Catholics and Baptists. He stated that he felt that a non-Muslim Chaplain was unable to properly facilitate his prayers and could not provide him with grief counseling when a relative died while he was housed in PPDC. He also testified that, now that he is housed in Hunt, he has access to an Imam, who happens to be another prisoner housed in the facility.

Sterling also testified that he filed grievance complaints with PPDC about his concerns, but the requests were ignored.

## II.     Standards for Statutory Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.     Analysis**

    **A.     Claims Against PPSO**

Sterling names the Plaquemine Parish Sheriff's Office as a defendant. The PPSO, however, is not a proper party and is not a legal entity capable of suing or being sued under § 1983. Under Fed. R. Civ. Proc. 17(b), Louisiana law governs whether the sheriff's office has the capacity to sue or be sued. To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person," which is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. The State of Louisiana grants no such legal status to any parish sheriff's office. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept.*, 350 So.2d 236 (La. App. 3d Cir. 1977). Thus, the parish sheriff's offices in Louisiana are not legal entities capable of suing or being sued. *Regur v. Lichfield*, 700 F. Supp. 863, 965 (M.D. La. 1988).

Accordingly, the PPSO is not a juridical person capable of being sued and the claims against it must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

    **B.     Claims Against the Plaquemines Parish Sheriff and Warden Narcisse**

Under a broad interpretation, Sterling alleges that he named the Sheriff and Warden as defendants because of their positions as administrators over the PPDC. He did not indicate whether these defendants were named in their individual or official capacities, so the Court will address both.

        **a.     Individual Capacity**

Under § 1983, a state actor may be liable only if the official was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an

4

act of the official and the alleged constitutional violation. *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). As will be discussed further below, supervisory officials, like a Sheriff or Warden, cannot be held vicariously liable under § 1983. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Instead, a defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act. *Douthit*, 641 F.2d at 346.

In this case, other than naming the Sheriff and Warden as defendants, Sterling alleges no claims against the Sheriff or Warden directly, nor does he indicate that either personally violated his constitutional rights for purposes of stating a claim under § 1983. Instead, at the *Spears* Hearing, he testified that these officials were named because they ran the jail and were responsible for the staff at the jail. As discussed below, that assertion is not a sufficient basis to hold the Sheriff or Warden liable under § 1983. Sterling does not allege that either official was aware of his concerns with hygiene supplies or that he made or discussed any request with either of official regarding religious accommodations. Without some alleged causal link between an act by the Sheriff or Warden and his claims, Sterling has failed to allege a non-frivolous claim against the Sheriff or the Warden.

Accordingly, Sterling's claims against the Plaquemines Parish Sheriff and Warden Narcisse in their individual capacities should be dismissed pursuant to § 1915 and § 1915A and as applicable 42 U.S.C. § 1997e, as frivolous and for failure to state a claim for which relief can be granted.

    b.  **Supervisory and Official Capacity**

As mentioned above, the Sheriff and Warden as supervisory officials cannot be held vicariously liable under § 1983 under any theory of *respondeat superior* simply because an

5

employee or subordinate allegedly violated the plaintiff's constitutional rights. *Alton*, 168 F.3d at 200; *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."). Sterling also has not alleged that he has suffered any injury directly resulting from any order, training, or other unconstitutional policy implemented by the Sheriff or Warden to state a basis for vicarious liability under § 1983 in a supervisory role. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).

A supervisory official may be held liable for his subordinates' actions only if the named official implemented an unconstitutional policy that causally resulted in plaintiff's injury. However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). Rather, the inmate must identify the final policymaker as well as the specific policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003).

To the extent Sterling asserts such a claim, under the broadest reading of his *pro se* complaint,[3] his conclusory allegations would still fail to allege a cognizable § 1983 claim. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to state a claim for relief).

---

[3] *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* pleadings are broadly construed).

1. **<u>Failure to Provide Hygiene Items</u>**

Under a broad reading of his complaint and testimony, Sterling claims that PPDC failed to provide him and other inmates with basic hygiene needs.[4] He testified that he could buy these items or, if he did not have money, the cost was deducted from his indigent inmate fund, but the jail did not provide the items free of cost. He claimed that the inmate handbook indicated that these hygiene items were to be made available to the inmates. He conceded, however, that the handbook did not indicate whether they were to be paid for by the inmates or provided for free.

To the extent Sterling suggests that the PPDC officials are not following their own inmate handbook, this allegation is insufficient to state a §1983 claim. *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("[I]nternal rules and regulations do not alone create federally-protected rights and a prison official's [alleged] failure to follow prison policies or regulations does not establish a violation of a constitutional right.")

Sterling does not claim that he has been denied hygiene supplies. Instead, he alleges only that he has not been provided with free hygiene supplies. Despite his complaints, the Constitution does not require that free hygiene supplies be provided to non-indigent inmates. *See Rue v. Gusman*, No. 09-6480, 2010 WL 1930936, at *10 (E.D. La. May 11, 2010). Sterling has not alleged either that he lacked the funds necessary to purchase hygiene items or that he was personally ever denied requested hygiene items due to lack of funds. Instead, when he could not afford what he wanted, it was paid for through his indigent inmate fund.

Thus, Sterling has not alleged a non-frivolous claim arising from any requirement that he pay for this own hygiene supplies. *Rue*, 2010 WL 1930936 at *10; *Cummings v. Gusman*, No. 09-

---

[4] The Court notes that Sterling does not have standing to bring claims on behalf of other inmates. *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 n.7 (E.D. La. Nov. 28, 2003).

144, 2009 WL 1649737, at *3 n.11 (E.D. La. Jun. 9, 2009) (non-indigent inmates may be charged for hygiene supplies). Sterling's claims must be dismissed pursuant to § 1915, § 1915A and, as applicable, 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

### 2. Ignored Grievance Complaints

Sterling claims that he filed numerous grievance complaints about his issues with the jail. He testified that his complaints were apparently ignored because he did not receive responses. Sterling's claim if frivolous.

A complaint about the adequacy of a jail's administrative grievance process is not sufficient to state a cognizable claim under § 1983 because an inmate has no right to an effective or successful grievance process. *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor) (citing *Geiger*, 404 F.3d at 373-74); *Comeaux v. Stalder*, 300 F. App'x 306, 308 (5th Cir. 2008) (challenges to administrative remedy procedures used to process administrative grievances fails to implicate a constitutional right). Sterling's claims must be dismissed pursuant to § 1915, § 1915A and 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

### 3. Religious Exercise

Broadly construing his allegations, Sterling claims that his right to free exercise of his religion was violated because PPDC failed to provide an Imam to facilitate and hold weekly Jumu'ah services. Although not specifically mentioned by Sterling, these claims may be addressed

8

under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment free exercise clause.

As an initial matter, it is important to recognize that Sterling is no longer housed in PPDC and has been transferred to Hunt. This transfer to a state run prison facility renders moot any claims Sterling has made for declaratory and injunctive relief under RLUIPA, since he offers no suggestion that there is a strong likelihood that he will return to PPDC. *Coleman v. Lincoln Parish Detention Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (citing *Taylor*, 296 F.3d at 378), and *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). In addition, RLUIPA does not authorize a private cause of action for compensatory or punitive damages, like those generally requested by Sterling, against the defendants in either their individual or official capacities. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 329-31 (5th Cir. 2009). Sterling, therefore, has failed to state a RLUIPA claim for which relief can be granted.

Under First Amendment considerations, Sterling's claims are also insufficient to state a non-frivolous claim. First Amendment protections of free exercise require the government to refrain from interfering with the religious beliefs and practices of individuals. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) (". . . the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."). However, in the context of prisons, "this right is subject to reasonable restrictions and limitations necessitated by penological goals." *See Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1999).

To evaluate prison practices, the Supreme Court applies certain factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), which requires, among other things, that the plaintiff establish that the prison has a policy or practice that unreasonably impinges on the exercise of legitimately held religious belief and the inmate does not have alternative means to exercise his fundamental right.

*Id*. at 89-90; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).  A prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility.  *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987).  This general tenet of constitutional law has been upheld even when a regulation prevents Muslim inmates from attending religious services central to their practice.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987) (holding that prison policy that had the effect of preventing Muslim inmates from attending religious services did not violate the First Amendment).

Contrary to these basic *Turner* considerations, Sterling has not actually alleged that the PPDC officials or a PPDC policy prohibited him from exercising his religious rights.  Sterling's belief that the jail is required to provide him with an Imam, organized prayer services, or even a prayer rug is not the standard applicable to a claim under the First amendment.  Instead, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 861-62 (5th Cir. 2004); *see Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77, 81 (5th Cir. 1992) (a court must consider "whether the regulation entirely stifles the prisoner's religious expression").

Even after allowing him to state his best case through the *Spears* Hearing, Sterling complains only that officials should have been required to provide him with Jumu'ah services led by an Imam while he was at PPDC.  However, Sterling has not pointed to any specific jail policy or regulation that prevented an Imam from visiting the facility or presiding over services.  Sterling was unable to provide facts (other than his bold assumptions) sufficient to establish that the PPDC officials had some role in selecting or providing a minister for other faiths or that the officials denied an Imam access to the prisoners.  Unlike what he has at Hunt, Sterling did not identify an

10

Imam (or any other Muslims) among the PPDC population or an Imam otherwise available from the outside who could have led a prayer service and/or who was prevented from doing so by the PPDC officials.

In other words, Sterling simply believes that the jail officials were required to provide him with an Imam. While clearly frustrating to him, there is no legal support for such an assertion under the circumstances of his case. With regard to his claim that PPDC officials failed to provide him with a prayer rug, the Fifth Circuit has held that a prison's "refusal to provide the demanded religious articles is well within the latitude in the administration of prison affairs which prison officials must be accorded." *Frank v. Terrell*, 858 F.2d 1090, 1091 (5th Cir. 1988) (quotation marks omitted); *accord Mack v. Reynolds*, No. 97-170, 2000 WL 1808277, at *3 (N.D. Tex. Dec. 11, 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense."). Sterling's assertion is also frivolous and not legally supported.

Similarly, Sterling has not alleged that the PPDC officials prevented him from engaging in other tenets of his faith or alternative forms of solitary prayer or meditation. *Accord O'Lone*, 482 U.S. at 351–52 (upholding regulation preventing Muslim prisoners from attending Friday Jumu'ah services with no alternative service offered because inmates were "not deprived of all forms of religious exercise, but instead freely observe a number of their religious obligations"). Sterling indicated by his testimony that he could have sought guidance from the non-Muslim Chaplain who visited the jail, but he chose not to do so because he assumed the person was not versed in Islamic prayer. Sterling has alleged no jail imposed prohibition to his free exercise of his Islamic faith.

In sum, Sterling simply has not alleged or testified to facts demonstrating that a jail policy or practice prevented him from exercising his religion in violation of the First Amendment. His

inability to consult with an Imam or participate in group prayer service was not the result of any identified prison policy or practice set forth to prevent Sterling's religious free exercise. Under the precedent above, the jail was not required by the First Amendment to hire or seek out a volunteer Imam or provide specific prayer service for Sterling's benefit. *See O'Lone*, 482 U.S. at 351-52.

Based on the foregoing, Sterling's First Amendment claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted. *See Coleman*, 858 F.3d at 309 (citing *O'Lone*, 482 U.S. at 351-52).

### 4. **No Physical Injury Alleged**

As part of his relief, Sterling seeks monetary compensation for the violation of his right to free exercise of religion and for having to pay for his own hygiene supplies. However, monetary relief of this kind is prohibited under 42 U.S.C. § 1997e(e). *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993) (noting that in affirming a district court's grant of summary judgment, we are not bound by the reasons articulated by the district court). Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Fifth Circuit has made clear that this provision is based on the relief sought by a prisoner and prevents a prisoner from seeking compensatory damages for violations of federal law where no physical injury is alleged. *See Geiger*, 404 F.3d at 375.

In this case, Sterling has not alleged any physical injury resulting from his inability to seek guidance from an Imam or attend Jumu'ah services or as a result of having to pay for his own hygiene supplies. As such, Sterling's request for monetary damages for any emotional upset caused by the conditions of his confinement at PPDC are barred by § 1997e(e). *See Busick v. Neal*,

380 F. App'x 392, 398 (5th Cir. 2010) (applying § 1997e(e) to bar prisoner's request for compensatory damages for religious freedom claim).

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff Kevin Robert Sterling's 42 U.S.C. § 1983 complaint against defendants Warden Denise Narcisse, the Plaquemines Parish Sheriff, and the Plaquemines Parish Sheriff's Office be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A, and as applicable, 42 U.S.C. § 1997e, as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 26th day of June, 2024.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.